Good morning, Your Honors. Michelle Lavecki-Ralphi, representing Appellant. I would like to reserve two minutes for rebuttal. That's fine. There are two main points that I would like to make today. First, the District Court abused its discretion in denying the COVID-19 variants when it ignored the goals, policies, and procedures behind it. And two, the prosecutor's inflammatory statements and glaring omissions and concessions breached the plea agreement. First, the Court abused its discretion when it denied the government-recommended COVID-19 variants. Appellant met all the requirements for the sentencing variants, yet the Court reasoned that it would not adjust downward for the judicial emergency based on erroneous facts. Counsel, this is Judge Paius. Good morning. Good morning, Your Honor. Let me just take a side issue for a moment. Well, it's an important issue. Do we have jurisdiction to even consider your arguments? Yes, Your Honor. Well, I shouldn't say it. Maybe jurisdiction, as Judge Christin was just saying, I use that loosely. You know, there was a plea agreement here, correct? Yes, Your Honor. It had a plea waiver, I mean, an appellate waiver and a clause on air waiver or issue waiver, correct? Correct, Your Honor. So, why are you even here? Your Honor, this is a very good question. Well, thank you. Well, it is our position that the government breached the plea agreement. So, at that point, the agreement was not enforceable. So, that is how we have jurisdiction. I read the proceedings before the district court. What did the government not do that it should have done? Well, Your Honor, there is a case that the government refers to in their briefing, Rojas, which is an unpublished case. And in that case, this court decided that the government's not speaking out on behalf of the departure cannot be considered a breach. Well, our prosecutor went one step further. Not only did he not endorse it enthusiastically, he also threw it under the bus, for lack of a better term. He actually said to the court, well, we think this is, you know, very generous in light of his criminal history. He started, but counsel, excuse me, but he started by saying, we stand by it. That's the first thing out of his mouth. We stand by it and then went on. I don't know where he has to enthusiastically endorse it. Let me ask you a related question. Can I ask you a related question? Absolutely. Even if we found the government breached, and I am not saying that I'm persuaded by that, but even if we found the government breached and that the breach waiver was not enforceable, wouldn't we be at plain error review? We would be at plain error review. That's exactly correct. How would you get over that hurdle? Well, if you look at the record carefully and you look at the sentencing hearing, the district court said out loud that it was not inclined to grant the departure, but it was open to debate. And at that point, when both counsels spoke, the prosecutor did not support it. I think the record indicates that it's reasonably probable, which is the standard, that Appellate would have received the COVID departure had the government not supported the court's initial inclination not to grant it. And that is how the breach affected Appellant's substantial rights. Well, you know, this is Judge Pius again. Yes, Your Honor. The defendant had been before this particular district judge about, what was it, about seven months before? Yes. And the judge was well aware. I mean, he starts out by saying, usually the sentences go up, not down. Yes. Right? Well, yes, Your Honor. That's a pretty strong signal that he was, you know, he'd already given him the benefit of the COVID variance the last time and he didn't seem very excited about giving it to him again. Yes, Your Honor. That goes back to the original argument that the court's basing its decision to not grant a departure on Appellant should have known better is not what the departure was created for. It was created for a judicial emergency. We were in a state of, our nation was in a state of crisis. For him to say, well, you should have known better, that wasn't what it should be based on. It should have been based on the waivers that my client gave. It should have been based on the judicial emergency. But instead, the court said it was going to not grant it due to his having known better. And then the prosecutor came in and said, almost said to him, like, no, you don't have to base it on that. Base it on his criminal history. And the court then right after that launched into its whole, that's correct. He has this whole criminal history. Therefore, I'm not granting the departure, which absolutely has nothing to do with the procedures and policies behind the departure. Counsel, I really read the record differently and I want to give you a fair opportunity to respond. Sure, yes, Your Honor, absolutely. It seemed to me, in fairness, that the judge, as Judge Pius said, was familiar with this defendant. He came in and made it clear he was not inclined to follow this recommendation or thought it was perhaps overly generous. That's my paraphrase. And turned to the government's attorney and sort of said, what have you got to say for this? I mean, he registered his skepticism. And in that context, it seems to me the U.S. Attorney really didn't have a whole lot of choice. He just has to get up and do his best. And he says, we stand by it. Again, I'm paraphrasing. We stand by it. And then has to explain, I recognize it's generous. That's in response to the judge saying, hey, I think this is overly generous. And then he went from there. But he clearly made it know that he was, I mean, that just seems to be a really important context here. At step one, when we're deciding whether there's a breach. And certainly when we get to plain error as to whether this was going to make a difference in the judge's mind. Do you want to respond to that? I do. I think the question here on a policy level, how far, what's the line going to be? So we said in Rojas, which is unpublished, that if they don't speak in support of it, that's not a breach. And that doesn't mean they're not providing United Rent. Now we get one step further. Even in the context of the district court, of the judge saying to them, I'm not inclined to grant this for all the wrong reasons. What do you think? And then the prosecutor to come in and say, I stand by it, but, you know, it's generous. And giving him more reasons, giving the judge more reasons. I mean, I guess the next line would be, I think it's going to have, is it going to have to get to a point where the line will be, the prosecutor has to say to the judge, I don't want to support this agreement at all. I signed it just because I think, you know, I felt strong-armed by policy to do so. I mean, what will be the line? If nothing else, we want to get an opinion that kind of puts a hard hand down on prosecutors. You have to show some level of support. I mean, my client did not get a United Rent. Excuse me. I just have one follow-up question about something you just said. Absolutely. About something you just said, which is that the prosecutor gave more reasons. Did the prosecutors tell the judge anything the judge didn't already have in the recommendation? Well, no, but the judge was very clear upfront why he was not going to grant the departure. And it wasn't based on his immigration and criminal history. It was based on the fact that he should have known better. He knows what prison conditions are. And also, on that note, to say that somebody should have known better, that prison conditions are traumatic at this point. You'll be in isolation. You have a higher chance of death. So you should have known better and not come back. We're talking about a reentry here. The offense itself is not at the level where the court should have dismissed the reality of the situation at that time. Hold on. Hold on. Because you're telephonic, you can't see that my colleagues are trying to ask you questions. I'm so sorry. Hang on. Sorry this has happened, Your Honors. I'm very sorry about this. Counsel, it would help if you would take a breath and let the judges get in a question just occasionally. Go ahead. Good morning. This is Judge Miller. I have a question about the issue Judge Paez started with, and that's the waiver, and specifically the waiver related to breaches. Under the terms of the agreement, as I understand it, the defendant essentially said, if there's a breach, I'm going to object in the district court, and if I don't, that will be deemed a waiver. I'll have decided to accept the breach. Is it your view that that kind of agreement is just impermissible categorically, or is there something about the circumstances of this case that allows him to avoid it? Yes, Your Honor. Absolutely. Another great question. In this case, again, it is our position that the prosecutor breached the agreement. So it would require a breach of the agreement to render the waiver provision unenforceable. And so once the prosecutor breaches the plea agreement, appellant was believed of its obligations under its terms, including the contractual obligation to object. So what that means is essentially that sort of provision just is not effective, right? You can say, I promise that I'll raise any breach in the district court, and if I don't, it will be deemed waived. But if the government breaches, you are relieved of that obligation. So it doesn't actually have any effect. Is that right? Yes, that is our position. If the government breaches, it does not have effect. In general, we look to analogies in contract law and thinking about plea agreements, and isn't it a general principle in contract law that you can waive breaches and you can agree that breaches will be deemed waived, if not raised within a certain period of time or in a certain form? Those sorts of provisions are common in contracts, aren't they? Right. Well, I think the thing that, Your Honor, what's getting confused here is that that idea stands for the entirely different proposition that a party may choose not to enforce a contract if the other side breaches. That's not what we have here. Rather than applying to a breach waiver within a contract, the choice to enforce after a breach is a matter beyond the four corners of the document. So that's what I, what, if the government breaches the plea agreement, it's no longer enforceable. One party may waive another's breach. So my client could choose not to enforce the contract if the other side breaches, or my client could choose to enforce it. That's the contract principles that we're dealing with here. Not that the contract itself becomes null and void because of the breach. Okay, thank you. Thank you, Your Honors. I think that would be my, yeah. Thank you for your patience. I know this is hard telephonically, but would you... We're going to hear from opposing counsel. Okay, thank you. Good morning, and may it please the Court. Zach Howe for the United States. This Court should dismiss this appeal under the appeal waivers in the plea agreement or in the alternative affirm on plain error review. I'll begin with the waivers in the plea agreement. We would certainly concede that if there was a breach here that would relieve Covarrubias from the general appeal waiver, the waiver of any appeal from the conviction sentence, but it would not relieve him from the specific provision contemplating how a breach claim can be raised. This Court has already applied that exact same breach waiver provision in the Rojas-Martinez case, and it can do the same here. Was that a published case? Unpublished case, Your Honor. I would say it's persuasive. I think if you're looking for a published case, the closest analogy would be... Let's talk about whether or not there was a breach of the overall plea agreement. So I'd argue that that claim fails every step of plain error review. So to begin with error, there's no breach here because the government... It's true, the government says this is a very generous variance in light of the defendant's criminal history, but... But the judge already knew all that. Knew the criminal history? Sure. Sure. It was in the record. Everybody knew that. That's correct, Your Honor. And the judge said, you know, he's been here before. I think that's correct, Your Honor. I'll simply note that when the defendant is recommending different guidelines and a different sentence, which was the case here, then this court has said that the government is allowed to respond, and in fact here it reserved the right to respond. Well, it could have... I agree with the notion that Judge Christin was referring to, which is that the government doesn't have to stand up and say, yes, we believe in this plea agreement, go with it, judge. They don't have to do it enthusiastically. There's none of that. But I can tell you many times when I was a district judge, when this situation would happen, the government would just say, you know, we just stand by the agreement, judge. That's certainly an option, Your Honor. It's what we agreed to. We stand by it. And, you know, thank you. Absolutely, Your Honor. That's certainly an option. I mean, that is usually the way it goes.  There were instances where prosecutors would catch themselves saying, oh, you know, I better not really say anything more, judge. Certainly. And if, you know, the argument is that saying it's very generous is somewhat an artful, I don't disagree with that, but it's not breach. It's not plain breach. If the government had not said we stand by this variance... They said that right at the very beginning, correct? That's correct. And then they followed it up at the end by recommending explicitly the eight-month sentence that results from inclusion of this variance. And then they even go a step further and say, this is sufficient but not greater than necessary. So coupled with that context, and again, taking into account that this is on the tail end of defense counsel, both orally and in the course of two filings... So do you think the government had any obligation at all to say, well, the variance is... The reason why we agreed to the variance is because, you know, COVID is running rampant in the prison system. No. The Supreme Court has been very clear on that in the Benjamin case, this court, in cases like Coleman and Johnson. They've all said that unless the government takes on a responsibility to explain the sentence or something going into the sentence, then it doesn't have the obligation. So there was no requirement for it to do so here, and the court didn't ask it to do so. At page 16 of the record, the court says, all right, thank you from the government. So in other words, give me your sentencing pitch. It doesn't ask for a specific, you know, explanation of the variance. And I will note that in the government sentencing papers at ER 26, the government does include the rationale. It's brief, but it includes the rationale for the variance. So essentially what's being asked here is for the government to restate the variance or offer some extra rationale. I'm not aware of any authority for that proposition. Follow up on Judge Miller's question about the breach waiver clause. Why does the government even include that? Why is it necessary? So I think the reason is twofold. One is that it gives the government the chance to, if it believes there's a breach, it gives it the chance to try and correct it. Or if it doesn't believe there's a breach, then it can make the pitch to the court, Your Honor, there's not a breach for this reason. Or there's not a breach, but out of an abundance of caution, let me give some extra explanation. And then the other reason for it is it allows... Let me ask you, I didn't see in the hearing where the government said it sort of at the end, you know, hey, Judge, there's a plea agreement. In the plea agreement, there's a breach waiver. I just want to confirm with counsel that they have no, there's no claim that anything has been improper here. There's no issues. That's true. The court needs to deal with it. Nobody said that, right? That's true, Your Honor. I'm not aware of any requirement that that occur. No, but that's the whole purpose of that breach waiver, right? Because you want him to, you want the defendant to raise any objection that he might have to any of the proceedings, anything that took place, right there in front of the district court so that the district court can deal with it. That's true, Your Honor. I think if that were going to be the case, then the government would essentially have to do that at every single sentencing hearing, just as kind of a prophylactic. Well, you know, as a sentencing judge, you have a whole list of things you need to go through. Boom, boom, boom, boom, boom. That's right. So maybe to kind of short-circuit this, I think this would ultimately all go to whether this provision was entered into knowingly and voluntarily. If the answer is yes, then it should be enforceable. And here, the provision was entered into knowing involuntarily. At page 17, excuse me, 16 and 17 of the Supplemental Excerpts of Record, the magistrate judge asks Covarrubias if he's familiar with the provisions in his plea agreement waiving appeal. He says yes. And then, of course, on appeal... Let me ask you this. I'm just thinking about this, how this all works out. So I guess what you'd be saying is that as soon as the government's lawyer made the response about general and pointing to the criminal history and all of that, defense counsel should have said, Your Honor, they're breaching the plea agreement. Then or by the end of the sentencing hearing. Right? Yes. That's what should have happened? Correct. And what should the judge have then done? The judge would then either say, yes, there's been a breach, at which case I believe there'd be resentencing in front of a new judge, or it would say, no, there hasn't been a breach for these reasons. And that was the second point I was going to make about why this provision is important. It's not only so the government can make a fuller record. It's so that the court can. It can either say, no, I don't think there's been a breach for these reasons. Yes, I think there's been a breach, and now I'm going to give this to a different judge for resentencing. Or it can also add, and by the way, I don't think there's been a breach, but I'm not actually relying on any of this information to deny the variance. Or yes, I am relying on the information. So it allows the government and the court to flush out a full record so that when this case comes before the court, then this court can actually make determinate decisions about whether the court was relying on these things or whether there was a breach. It can make a better decision. Is this a standard provision in plea agreements in your district? Yes. And just to go back to that for a minute, so the reason I don't think that breach gets the defendant around the particular provision resulting, relating to forfeited breach claims, it follows partially from contract law principles as Judge Miller alluded to. We cite a bunch of cases at page 18 of our brief saying that a party can waive a breach. And here, the parties did do that, but they did it in the negotiated for terms of the plea agreement. So it follows from contract law principles. It follows from general waiver principles. And it follows from analogous case law in this court. This court's Wells case is dealing with sort of a different exception from appeal waivers, but it's analogous here. There, the court says, look, if you're raising a constitutional claim, then that would actually release you from a general appeal waiver, but it wouldn't release you from a waiver of the very constitutional claim you're trying to raise. So it gives the example, I think, of excessive fines claims. It says, look, if you're raising an excessive fine claim, but you waived an excessive fine claim in your plea agreement, then you can't raise it on appeal. Well, here, by analogy, a breach would release Covarrubias from the general waiver of his appeals from conviction and sentence, but it doesn't release him from the specific waiver of forfeited breach claims. And then we've talked some about breach already, but just to spend a moment on prejudice, here, there is no prejudice because if you look at the district court's discussion of why it is not granting this variance, page 15 and 17 of the record, it says, it's because I gave it to you before and you've experienced imprisonment during the pandemic and yet despite getting that benefit and having that experience, you made the decision to commit the very same crime again during the pandemic. And there's some suggestion by defense counsel that that's improper grounds for denying this variance, but this is ultimately a variance. It's phrased in terms of a departure, but it's a variance. So the court can take into account the full universe of factors under 3553A and decide that that's a good reason to deny the variance. And that's what it did. And the government wasn't focused on that rationale. It only mentions criminal history, so it can't be the case that those comments caused the court to rely on entirely different reasons to deny the variance. So there's no prejudice resulting from those comments. And I see I'm out of time. Again, I would ask the court to dismiss or in the alternative, affirm. Thank you. Thank you for your argument. Madam Clerk, could you please put two minutes on the clock? We took up a lot of opposing counsel's time, and it's tough to do this by phone. So we'll try not to interrupt you. Go right ahead. Your Honor, there is not much more that I have to say at this point. I do want to address as to whether or not defense counsel objected at the time of the sentencing. If there was indeed a breach, whether objected to or not, the agreement was not enforceable when the breach occurred. So deciding whether there was a breach then or now does not change that fact. I also want to address the new information idea. So while the prosecutor didn't give the court, the judge, any new information, that also isn't what is required for there to be a breach. In addition, at that point, any objection would have been futile. That's all set out in my briefing. But the bottom line is that the spirit of the breach was not because the prosecutor gave the judge new information that it could use in order to find, to deny the departure. What happened here was the judge did indeed take that and run with it. It referred in its, when it was sentencing, it actually referred back to the prosecutor's statement and said, as indicated, there's a huge criminal history here and this is why, this is part of the reason why I'm denying that variant. So it is our position, and as far as prejudice goes, reasonably probable. I mean, that's the standard. The court had an inclination to deny the departure if the prosecutor had been supportive of the departure or had just remained silent and said along the lines of, we support this agreement, we stand by it, and then remained silent. It is reasonably probable that the court would not have gotten what they say the proverbial wink at, the court judge would have not received that wink from the prosecutor, like, I'm on board with you, I'm not really, this is something I'm supposed to do, but I don't really feel like it's the right thing to do and I'm on board with you. So they had this kind of implicit agreement going on during the sentencing. Whereas, if the prosecutor stood firm and spoke that he was stood by the agreement, I stand by it, I hear everything you're saying, that he was here before, he knows what's better, he should have known better, all the things that the court was saying, but I stand by it anyway, the court would have had to second guess its kind of hollow reason for denying the departure in the first place. So with that, I end. Thank you. Thank you both for your arguments, we appreciate them very much and we appreciate your patience with our questions and we'll take that case under advisement and go on to the next case on the calendar.
judges: PAEZ, CHRISTEN, MILLER